FREDERICKA POTTER, Respondent, v. METRO-
POLITAN STREET RAILWAY COMPANY, Ap-
pellant.

Kansas City Court of Appeals, February 21, 1910.

1. PERSONAL INJURY: Res Ipsa Loquitur: Pleading.    Where
specific negligence is alleged, no presumption arises in plaintiff's
favor under the rule of *res ipsa loquitur*.

2. ———: ———: Evidence: Presumption.    Where proof alone
of the act which causes the injury, shows negligence, there is
no necessity for the aid of a presumption under the rule of
*res ipsa loquitur*.

3. THEORY AT TRIAL: Appeal.    Where an action for damages
is brought under section 2864, Revised Statutes 1899, but the
defendant tries the case on the theory that the damages are
measured by section 2866, and so states to the court, and the
trial court in consequence gives an instruction for plaintiff on
that theory, defendant cannot, on appeal, complain of the in-
struction, notwithstanding he excepted to giving it.

4. INSTRUCTION: Error.    Notwithstanding there is an erroneous
instruction peremptorily informing the jury that they cannot
find for plaintiff in less than a certain amount, yet, if they find
a much larger amount, it was not harmful and is not reversible
error.

Appeal from Jackson Circuit Court.—*Hon. John G.
Park,* Judge.

AFFIRMED.

*J. H. Lucas, A. F. Smith, W. F. Guthrie* and *Boyle
& Howell* for appellant.

*E. H. Gamble* and *Rosenberger, Taylor & Reed* for
respondent.

ELLISON, J.—This is an action for damages
brought by plaintiff on account of the killing of her

husband by the alleged negligent act of defendant's servants in running a car over him. She recovered judgment in the trial court.

It appears that the defendant operates an electric street railway system in Kansas City and has a double track on Twelfth street. At an eastern point on this street there was a place where cars from the west, running east on the south track, were switched or run over to the north track and there made ready for the return trip west on the north track, that is to say, at that point the south track ceased to run parallel with the north track, by crossing over into the north track, the two thus becoming one track and extending on east, as a single track, a sufficient distance to allow a car from the west to run onto it and there be put in condition for its return trip west, as just stated. This was done by the motorman raising and fastening up the fender on the east end of the car and lowering the one on the west end; and the conductor unfastening the rope at the west end attached to the trolley pole and walking to the east end with it, thus turning the pole to the east end of the car. In this way the front end of the car going east was made the rear end going back west. It frequently happened that before a car would be made ready at this place to start on its return trip west, another car from the west would arrive, and it would stop up west on the south track, a safe distance, until the other car started out. On the occasion in question the motorman of the car which had been run in onto the north and single track, had adjusted the fender at either end of the car and the deceased had taken the trolley rope from the west end and walked around to the east end where he was to put the pole on the wire and tie the rope. To do this he was in the middle of the track behind the car, when a car from the west arrived, and instead of stopping, it, from some cause, continued rapidly on, crossing over onto the north track and violently colliding with the

standing car so that it was knocked back thirty feet or more and ran over the deceased, killing him instantly. The collision likewise killed the motorman of the incoming car.

The negligence charged is special and consists of several different acts. First, in failing to have the appliances for controlling the car in good repair; second, in failing to make proper use of such appliances and in failing to properly control and operate the car; third, in failing to sound any warning of its approach so that deceased might have gotten off the track from behind the standing car. Defendant has taken the position that plaintiff has made no proof of negligence against its servants—that there. is no such proof in the record—and that she, therefore, is driven to the necessity of undertaking to uphold the judgment by applying the rule of *res ipsa loquitur* whereby she calls upon a presumption of negligence to eke out her case. And defendant says she cannot do this for the reason that having taken upon herself to allege that she knew the character of negligence which caused the death and specifically stating what it was, she had destroyed her right to ask the aid of the presumption which obtains by the rule of *res ipsa loquitur,* and must prove the acts alleged, or a sufficient part of them, unaided by any presumption under that rule. Now if it be true that plaintiff has not made any proof of negligence and depends on a presumption under the rule referred to, defendant is right, and she must fail in her case; since where special negligence is charged the rule of *res ipsa loquitur* does not apply. [McGrath v. Transit Co., 197 Mo. 97; Roscoe v. Met: Street Ry. Co., 202 Mo. 576; Beave v. Transit Co., 212 Mo. 331; Evans v. Railroad, 222 Mo. 435.]

Defendant seems to assume that proof merely of the mishap, or the thing which injures or kills, is not proof of negligence. Frequently it is not, and in a certain class of cases a presumption will arise in favor

of the plaintiff, supplying the lack of proof, and the defendant has the burden of freeing himself. As an instance, and for illustration only, a passenger is injured by an act of the carrier. He does not know what caused the thing resulting in his injury, but he has the right to assume it was some negligence on the part of the carrier and though he does not know what it was, he may still institute his action by alleging, generally, that it was negligently caused and the law will aid him by presuming that it was, and this presumption is sufficient to entitle him to a recovery unless the defendant can exculpate himself by otherwise accounting for it.

But in the innumerable ways in which injuries result from the act of another it is not infrequent that proof of the act will itself demonstrate or show the character of the act. If it shows it to be negligent, then there is no need of a presumption, and there is neither necessity nor room for application of the presumption arising from the rule of *res ipsa loquitur*. We refer to Hamilton v. Railroad, 123 Mo. App. 619, where these matters were discussed by us.

We will therefore consider whether the proof of the collision of the cars whereby deceased was run over and killed, does not, of itself, establish the negligence alleged. The evidence of the collision showed that it occurred by the incoming car continuing at its rapid rate of speed with no apparent effort to stop it, though the standing car was in full and immediate view. The place was on a slight down grade though practically on a level, and there was no attempt to set the brakes, nor to ring the bell or make any outcry of warning, when the motorman must have known, if he thought at all, that deceased was behind the standing car performing the usual duty of adjusting the trolley pole and rope. The jury could well and reasonably infer, under the circumstances shown in evidence which described the collision, that the motorman of the incom-

ing car had allowed himself to become in an absent-minded or listless mental state. It is a rule constantly announced in cases challenging the sufficiency of evidence, to make a case of such substance as to justify a verdict, that reasonable inferences may be drawn from facts which the evidence establishes. An application of that rule to this case will demonstrate that the specific negligence alleged was supported by evidence and thereby upholds the verdict.

But plaintiff was not put to the necessity of depending alone upon the evidence of the collision at the time and place described. She introduced evidence tending to prove that the brakes of the car were in working order and had been used in stopping the car at different places on the trip out. More than this, there was evidence which tended to show that when the incoming car was passing the point where it should. have been stopped, the motorman was observed standing in the front of the car but not doing anything. At this time he should have been setting his brake; or, if that was having no effect on his car, the most ordinary prudence would have suggested that he should ring the bell or give some warning outcry.

It is contended that plaintiff joined two distinct causes of action in one count. That both were submitted to the jury with a measure of damages applicable to only one of the causes. As stated at the outset the petition charged that the negligence consisted: In not having the appliances of the car in good repair; in the servant's failing to make proper use of the appliances and to control and manage the car; and, in failing to give any signal or warning of approach. There was no evidence as to the first, and as no objection was made to the petition at any stage, that charge may therefore be considered as out of the case. With that out, the petition only states a cause of action under section 2864 as distinguished from section 2866. Section 2864 was amended by the laws of 1905, by adding

other persons and conveyances to which it should apply and in the amount of damages to be recovered. It is with the latter amendment we are now concerned. It formerly read that the defendant should "forfeit and pay for every person or passenger so dying, the sum of five thousand dollars." · The amendment added the word "penalty" to "forfeit and pay," and substituted as the amount to be recovered, the words, the sum of "not less than two thousand dollars and not exceeding ten thousand dollars in the discretion of the jury." The Legislature may have considered there were some cases where the negligence was of exceptional cruelty or indifference, where five thousand dollars would be too small, and other cases where it would be too large a sum, and therefore deemed it just and wise to let the jury fix the amount at not less, nor exceeding, the limits stated. It is the theory of defendant that notwithstanding the negligence charged put the case within the provisions of section 2864, where the sum recovered is a penalty, yet, notwithstanding this, the court, by an instruction for plaintiff, placed the measure of damages under section 2866, where the sum recovered is measured by the pecuniary loss to the plaintiff. The instruction is subject to that criticism. We here insert it, the last half or clause being the part to which defendant, at this point in the controversy, objects:

"The jury are instructed that if you find for the plaintiff the law provides that defendant shall forfeit and pay to the plaintiff, as a penalty for the death of Elliott Renson Potter, a sum not less than $2000, and not exceeding $10,000, in the discretion of the jury, and you should assess her damages at such a sum within the limit stated as, in your discretion, you may determine to be proper and just under the circumstances disclosed by the evidence. But in assessing such damages, you should exclude all idea of compensation for

the injured feelings of plaintiff and her loss of the companionship of her husband, and should base the damages recoverable upon the pecuniary value of the husband's life, taking into consideration his age, health, probable length of life, his capacity to earn wages, and what you may believe from the evidence would have been the fair value of her support from him from the time of his death during the time that he would probably have lived and supported her."

But notwithstanding this error, we consider defendant without right to complain, since it is of its own making. During the examination of witnesses as to the damages defendant never objected to the line of inquiry by plaintiff directed to showing her pecuniary loss by the death of her husband. On the contrary, when it came to cross-examination, defendant followed the same course at length and in detail, thus trying the case on a theory which the court quite naturally adopted as in line with the views thus shown by each side. But more than that, at one point in the cross-examination defendant's counsel stated, in terms, that the court would instruct the jury that the measure of damages to plaintiff would be the loss of deceased's earnings that went to her support. It is clearly not allowable to permit defendant now to complain of a theory adopted by the court at its own instance and suggestion.

In a supplemental brief defendant replies to plaintiff's charge that it invited this error, and urges that while such invitation and participation may have cured error in that part of the instruction, it did not in the whole of it; that the first part, directing the jury that if they found for plaintiff, to find not less than two nor more than ten thousand dollars, was measuring the damages by the penal section (2864) and peremptorily directing a verdict for at least two thousand dollars. In other words, defendant's position is that, granting it consented to measuring the damages by the

pecuniary loss, as required by section 2866, it did not consent to have them also measured as a penalty by section 2864, as was done by the first half of the instruction.

It is true that plaintiff should have been confined to one section or the other, but the question remains, was the error harmful in the circumstances disclosed in the record. The only harm it could work would be in case the jury should consider plaintiff was damaged less than two thousand dollars they would find themselves confronted with a peremptory direction not to find less than that sum. But if the jury were of the opinion that the damages should be assessed at a greater sum than two thousand dollars, then a peremptory direction not to find less could not have affected the result  The amount found was $5800 and being thus so far in excess of the sum limited as a minimum, demonstrates that the instruction did not influence their consideration.

We regard the objections made to some of the other instructions as too technical for practical purposes. Others we have disposed of by what we have here written. We do not see any error in the rulings of the court on the conduct of counsel, in argument. Nor do we regard the showing of the manner of deceased's death and of his being dragged, as error. It tended to show the nature of the collision and was not improper in the circumstances disclosed.

On the whole record we find that we have not proper ground to interfere with the judgment, and it is accordingly affirmed. All concur.